Curia, per
Whitner, J.
The question involved in the present motion is, whether there was sufficient proof on the trial below, that the paper propounded as the will of John A. Wooster had been attested in legal form. The report of the presiding Judge, and the written testimony read at the Circuit trial, furnish the facts to which this Court must look.
To give validity to such a paper, the statute requires an attestation by three credible witnesses. Three names are subscribed to the paper adduced, to wit — L. B. Bostwick, Whitty Sasser, and Hezekiah Walll. Bostwick alone, of these three persons, was produced and proved his own signature and that of Wall, who made his mark; as also the signature of the alleged testator. He proved, also, that Wall was dead, but he had no knowledge of the handwriting of Whitty Sasser, nor did he remember him at all; no other person present testified to the fact of Whitty Sasser’s attestation, nor was any proof offered of his handwriting. Whether this was sufficiently shewn by the circumstances, is the precise matter of present inquiry. No question of law is raised, and being one purely of evidence, passed on by the jury, shall their verdict be disturbed ? It may be assumed as true, that this witness was absent from the State, and had not been heard of for the preceding ten years, and whilst this justified proof of his attestation by secondary evidence, of what does it consist when collected together ? The usual proof, certainly in case of death' or absence, is of handwriting — authority need not be furnished to this point, and a grave question is presented, whether; in such a case as the one before the Court, evidence less direct than proof of handwriting should suffice. The A. A. 1839, (11 Stat. 41,) requires, when a will is to be proven in solemn form, that all the subscribing witnesses shall be sworn, with a proviso, that if any are absent from the State, dead or insane, “proof of the handwriting of the witness so absent, dead or insane, and of the handwriting of the *412 testator, shall be admitted as prima facie evidence that the testator did execute the will in question, in the presence of the witnesses thereto.” Whether it was intended to set up a more stringent rule of evidence than such as was known to the Common Law, it may not be necessary, however, now to inquire. The Legislature has sought, with great care, the prevention of fraud in such instruments, as well in the particularity to be observed in their execution, and requiring the attestation by three witnesses, as also the precaution of the specific direction above referred to in ascertaining that fact. The Court, in determining the degree of evidence, should at least be careful not to defeat the end by any relaxation of rules established.
Twelve years had elapsed; a man of the name of Whitty Sasser had been in the neighbourhood, and it was thought was at the house of Wooster the day the paper was drawn — the name was written between the signatures of the other two witnesses, and in ink of the same colour — would these additional circumstances satisfy the mind in any particular case of the signature of a witness, much less in one so grave, and about which so many guards have been interposed ? It is proper, perhaps, to advert to other attendant circumstances. The alleged testator was a man of weak mind and drunken habits — lived at the time with his brother, for whose benefit the paper was intended, and in whose custody it is supposed to have been since its alleged execution. The paper was executed in a frolic, or during the time of a general drinking frolic, and in such frolics, which were frequent, the brothers and the draftsman usually participated; and though the subscribing witness produced, thought, at the time he was sober enough to know what he was about, yet he would not have signed as a witness, had he known, at the time, he would ever be called on to prove it.
This Court concurs in the opinion expressed by the presiding Judge to the Jury, that the proof was not sufficient that Whitty Sasser attested the paper in question; and the jury having so determined by their verdict, the case cannot be sent back.
The motion for new trial is refused.
*413 O’Neall, Evans, Wardlaw, Frost and Withers, JJ. concurred.

Motion refused.